IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 12, 2005

## STATE OF TENNESSEE v. SAMUEL EUGENE WEBSTER

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-D-2193     Seth Norman, Judge**

_____

**No. M2004-01343-CCA-R3-CD - Filed August 8, 2005**

_____

Defendant, Samuel Eugene Webster, was charged with aggravated kidnapping and aggravated rape. Pursuant to a negotiated plea agreement, he pled guilty to simple rape, a Class B felony, with a sentence of eight years and the manner of service to be decided by the trial court following a sentencing hearing. The charge of aggravated kidnapping was dismissed. Following a sentencing hearing, he was sentenced to serve eight years in the Department of Correction. On appeal, Defendant argues that the trial court erred in denying his request for alternative sentencing. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT E. WEDEMEYER, JJ., joined.

C. LeAnn Smith, Attorney, Nashville, Tennessee, for the appellant, Samuel Eugene Webster.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and James Todd, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

At the sentencing hearing, the court heard testimony from Dr. Donna Moore, a psychologist from Centerstone, Kathy Wilcox, Defendant's former probation officer, Barbara Grizzard, the victim's mother, and JoAnn Webster, Defendant's grandmother.

Dr. Moore testified that she had completed a psychosexual evaluation of Defendant. Psychosexual evaluations are designed to afford therapeutic information concerning the sexuality of an individual, management strategies, risk assessment, and treatment recommendations. She testified that following the evaluation of Defendant, the Centerstone sex offender treatment team concluded that Defendant was not a good candidate for out-patient treatment. She testified that when

she questioned him about the rape, "he essentially laid the responsibility for the offense on the young girl and described it in more of a consensual relationship type of encounter." The psychosexual evaluation report included two versions of the facts underlying the offense. The report described the "Official Version including Victim's Statements About The Noted Offense" as follows:

> According to the victim, [who was 13 years old at the time,] she was walking home from the swimming pool when [Defendant, who was 17 years old,] (a platonic acquaintance of hers) grabbed her arm and told her to go to the baseball field with him. She alleged that while there, she was alone and somewhat isolated with [Defendant] when he asked, "can I beat it?" which the victim indicated to police officers meant to have sex with him. She reported that she told him "no" before he pulled down her shorts sans panties, pulled her legs out from under her, and raped the victim through penile vaginal intercourse. She reported that she yelled for him to stop until another boy heard her cries and witnessed the rape before he pulled the suspect off of her. The victim's mother reported that her daughter came home that day and was visibly upset, had been crying, and that her clothes were very dirty.

> The witness reported that while he was at the ballpark watching practice, he had seen the victim and [Defendant]. He reported that after seeing them go behind a partition, he heard the victim screaming for help. He reported that he saw the victim on the ground on her back with her shirt pulled up around her neck, her shorts pulled down to her knees, and [Defendant] on top of her in missionary position. [Defendant] was stuffing a shirt into her mouth before the witness pulled him off of the victim. The witness reported that the victim was crying, she had blood on her vaginal area, and her clothes were dirty and bloody. According to the witness, [Defendant] admitted that he 'body slammed' the victim.

The report described "[Defendant]'s Statements About The Noted Offense" as follows:

> [Defendant] stated that he went to the pool as usual with a group of friends. While there, one friend pointed out the victim and said 'that girl will give you head.' He reported going to the deep end of the pool while the victim was on the shallow end of the pool with her friends. He reported staying there for an hour before leaving. While waiting for his friends outside locker room [sic], he saw the victim with her friends. [Defendant] denied that he was interested in pursuing the victim. According to him, he went to the gym to play basketball and on the trip home, he alleged that the victim followed him and repeatedly asked him to have sex with her. He reported that she voluntarily laid on the ground and encouraged him by stating 'come on.' He stated that her repeated admissions that 'it hurt' led him to get off the victim. He denied sexual intent or force and said he only engaged in sexual contact with her to 'please her.'

Records indicated however, that when questioned by the police, [Defendant] admitted that he body slammed the victim and forced her to have sex with him. He reportedly told the police officer that he did so because he was 'horny.'

Dr. Moore also testified that during the evaluation, Defendant repeatedly stated that he could "kill" others he described as angering him through such behaviors as talking behind his back, and that he failed to recognize the meaning of those statements, and that he "seemed perplexed" that she questioned violence as a "suitable solution for a minor annoyance." When discussing Defendant's sexual history with other partners, Defendant indicated that he had had sexual intercourse when he was fourteen, reported having about ten sexual partners since that time, and stated that he does "whatever I have to do" to get partners to sleep with him. The psychologist's report summarized the treatment team's recommendations for Defendant. The report states that Defendant "has significant risk of sexual exploitation of vulnerable people," with an "increased" risk of reoffending. He "should be considered to be moderate to high risk" of recidivism, and "[t]he effective way to manage [Defendant]'s risk of sexual violence is for him to be continually monitored in terms of his high-risk behavior." Finally, the report concluded that community based sex-offender treatment is not adequate to meet Defendant's needs. On cross-examination, the witness testified that Defendant's level of intellectual functioning was below average and he had a first-grade reading level.

Kathy Wilcox testified that she was Defendant's probation officer in juvenile court when he was placed on a six-month diversion probation for a possession of marijuana charge in October, 2001. The conditions of Defendant's probation included twenty hours of public service work, completion of a paper on the effects of marijuana on the body, subjection to random drug screens, restricted driving privileges, and a requirement that he have no new offenses. Additionally, his mother was given information on filing an "unruly" petition to "deal with school skipping and curfew." The probation officer testified that Defendant did not successfully complete the probationary agreement. He did not comply with three random drug screens the officer required, and tested positive for marijuana in April of 2002 after Ms. Wilcox approached the district attorney's office regarding Defendant's noncompliance with the drug screens. Additionally, during Defendant's probation, he was under an "unruly" or a "valid court order" with a different probation officer and services were introduced to the home pursuant to a Caring for Children Crisis Center intervention report. Also, in April of 2002, youth services counseled with Defendant and Defendant's mother regarding a theft charge against Defendant. Defendant did complete twenty hours of public service work and the written paper in accordance with his probation agreement.

The victim's mother, Barbara Grizzard, testified that her daughter was thirteen years old when she was raped. The witness testified that her daughter can no longer "go outside without being tortured by [Defendant's] friends or his family saying terrible things to her." She and her daughter became "isolated people" and no longer "trust anyone." She testified that she put her daughter in counseling, but that her daughter "didn't want to take the counseling because the lady told her some negative things during counseling about her situation" and she "hasn't been able to get [her daughter] to kind of open back up yet to the counseling." On cross-examination, the victim's mother stated that

she would "like to see [Defendant] stand up and be a man and be held accountable for what [he] did to my daughter."

The only witness to testify on behalf of Defendant was Defendant's grandmother, JoAnn Webster. She testified that Defendant has "expressed remorse" to her. She stated that Defendant lives with her, that she arranges all of his transportation, and that she would help him attend all appointments with a probation officer or for any treatment he might receive if he were given some type of alternative sentencing. She testified that Defendant was not employed, but that she has assisted him in taking classes towards receiving a GED.

Following the sentencing hearing, Defendant asked the court to sentence him to split confinement, with one year served in the Lois M. DeBerry Special Needs Facility, where he could receive in-patient treatment, and with the remainder of his eight-year sentence suspended. In response, the trial court stated:

> "I have to look at what kind of message this sends to this young lady's neighbors after the testimony I have about them antagonizing this young lady, she can't go out of her house and everything else. Does that send a message out there in that community that you're just going to get one year if you get charged with something like that and that's all you're going to do. I have to take that into consideration too. I have to do something to help this young lady is what I've got to do. Now, I'm charged with the responsibility of rehabilitating a person charged with a crime, if I can, but I'm also charged with the responsibility of looking after the victim in the case. Now what kind of message is that going to send to the community? . . . You can just go out there and threaten to kill people if they don't do what you are told, they want you to do, they've got no regard for the opposite sex. And I can't abide by that. I can't abide that attitude. Everybody in this country is equal, one to the other. And nobody has domination over anybody else. And that, nothing makes me sicker than some male that's got this idea that he dominates females. Nothing is more repulsive to me than that thought."

Defendant was then sentenced to serve eight years at one hundred percent in the Department of Correction.

On appeal, Defendant argues that the trial court erred when ordering him to serve his full sentence in incarceration, rather than awarding alternative sentencing. This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, in the case *sub judice*, the record does not demonstrate that the trial court complied with the statutory directives, as the record does not contain any of the court's findings other than the court's above-described oral statements at the conclusion of the sentencing hearing. As such, there is no presumption of correctness and our review

is *de novo*. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

In conducting our review, we are required, pursuant to Tenn. Code Ann. § 40-35-210(b), to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). However, this presumption is not available to a defendant who commits the most severe offenses, has a criminal history showing clear disregard for the laws and morals of society, and has failed past efforts at rehabilitation. Tenn. Code Ann. § 40-35-102(5); *State v. Fields*, 40 S.W.3d 435, 440 (Tenn. 2001). Furthermore, since Defendant was convicted of a Class B felony, he is not entitled to this presumption. *See* Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

A court may also consider the mitigating and enhancing factors set forth in Tenn. Code Ann. §§ 40-35-113 and 114 as they are relevant to the § 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); *State v. Batey*, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis,

tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986).

Defendant argues on appeal that the trial court erred in imposing a sentence to serve and asks this Court to "alter his sentence to be served in an alternative fashion other than strict confinement." Initially, we note that the record on appeal is incomplete. Defendant has failed to include in the record on appeal a transcript of the guilty plea hearing relating to his conviction. In addition, the transcript of the sentencing hearing indicates that "proceedings were had . . . without the court reporter present" and as a result the transcript begins mid-sentence, during the direct examination of Dr. Moore. Defendant should have objected to any proceedings that were had outside of the presence of the court report, and if Defendant was not given relief on such an objection, Defendant should have alternatively obtained a statement of evidence summarizing the portion of Dr. Moore's testimony that was given prior to the court reporter being present. It is the duty of the defendant to provide a record which conveys a fair, accurate and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). Failure to include a transcript of the guilty plea hearing and failure to include a complete record of what transpired during the sentencing hearing in the record on appeal prohibits this Court from conducting a full *de novo* review of the sentence under Tennessee Code Annotated, section 40-35-210(b). *See State v. Litisser Jones*, No. W2003-02697-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 620 (Tenn. Crim. App., at Jackson, July 14, 2003) (no Tenn. R. App. P. 11 application filed); *State v. Consuela P. Carter*, No. M2002-01100-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 269 (Tenn. Crim. App., at Nashville, March 27, 2003), *perm. app. denied* (Tenn. Oct. 13, 2003). Regardless, based on the evidence introduced at the sentencing hearing, we conclude that the trial court properly denied Defendant's request for alternative sentencing

We note again that as a Class B felony offender, Defendant is not presumed to be a favorable candidate for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6). According to the evidence introduced at the sentencing hearing, Defendant did not meet his burden of establishing his suitability for alternative sentencing. Defendant contends that the trial court erred in failing to apply any statutory mitigating factors under Tennessee Code Annotated section 40-35-113. Specifically, Defendant argues that the trial court should have applied three factors: (3) substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense; (6) the defendant, because of youth or old age, lacked substantial judgment in committing the offense; and (12) the defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime. *See* Tenn. Code Ann. § 40-35-113. In addition, Defendant argues that the court should have placed some weight on Defendant's "release of the victim, and his diminished mental capacity." Nothing in the record supports Defendant's contention that either factor (3) or factor (12) apply to Defendant. No evidence was introduced at the sentencing hearing indicating either that grounds existed to excuse or justify Defendant's rape of the victim, nor was any evidence introduced that Defendant acted under duress. Also, according to the record on appeal, Defendant did not "release" the victim. Rather, the witness who responded to the victim's screams for help told police that he found Defendant in the act of raping the victim and stuffing a shirt into her mouth and actually

"pulled [Defendant] off of the victim." Defendant also failed to establish that his age or mental capacity made him unable to appreciate the nature his conduct. Although he was seventeen at the time of the offense, he reported having at least ten sexual partners since the age of fourteen, stated that he does "whatever I have to do" to get partners to sleep with him, and reported to police that he "body slammed" the victim and forced her to have sex with him because he was "horny."

Although Defendant does not have a substantial criminal record, we agree with the trial court that a sentence of incarceration is appropriate. Defendant's former probation officer testified that he violated the terms of a probation agreement in 2002, demonstrating that measures less restrictive than confinement have recently been applied unsuccessfully to Defendant. Although Defendant pled guilty to the offense, he has failed to acknowledge the seriousness of the offense--a violent rape of a young girl--instead describing the encounter as a consensual encounter and an attempt to "please her." The victim's mother testified that the victim has been antagonized by members of the community who are friends or relatives of Defendant. As such, confinement is necessary to avoid depreciating the seriousness of the offense. Furthermore, according to the results of the psychosexual evaluation, Defendant has a high risk of recidivism and is unlikely to benefit from rehabilitative treatment for sexual offenders. Rather, the report revealed that the most effective way to manage Defendant's risk of recidivism is for him to be "continually monitored in terms of his high risk behavior." Defendant is not entitled to relief in this appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE